UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
HIGHLAND RENOVATION CORP.,      )
                                )
         Plaintiff,             )
                                )
         v.                     )        Civil Action No. 07-1902 (RWR)
                                )
HANOVER INSURANCE GROUP,        )
                                )
         Defendant.             )
_____ )

MEMORANDUM OPINION

Plaintiff Gordon P. Peyton, Trustee in Bankruptcy for
Highland Renovation Corp. ("Highland") brings this action against
surety bond issuer Hanover Insurance Group ("Hanover") under the
Miller Act, 40 U.S.C. § 3133, for $329,183.03 that is allegedly
owed to Highland by the Military Personnel Services Corporation
("MPSC") for work Highland engaged in to renovate the Old Post
Office Pavilion in Washington D.C.  Hanover moved to dismiss for
lack of subject matter jurisdiction, and Magistrate Judge
Facciola issued a report recommending granting Hanover's motion,
concluding that this court lacked jurisdiction because Highland
did not file suit within the one-year limitation period set forth
in 40 U.S.C. § 3133(b)(4).  Highland objects to the magistrate
judge's report and recommendation.  Because Hanover's motion is
properly treated as one for summary judgment, and there is no
genuine dispute about material facts that show that Highland

- 2 -

filed this action outside of the limitation period, judgment will be entered for Hanover.

BACKGROUND

In 2004, the General Services Administration ("GSA") entered into three contracts with the MPSC to renovate the Old Post Office Pavilion in Washington D.C. - - Contract 166 for $401,452; Contract 212 for $902,650; and Contract 221 for $326,926 (collectively "the contracts"). (Compl. ¶¶ 5, 7.) In June 2006, the MPSC entered into a contract with Highland that called for Highland to perform the renovation work at the Old Post Office Pavilion that MPSC was obligated to complete under its contracts with the GSA. (Id. ¶ 6.) Hanover issued payment bonds for each contract. (Id. ¶ 7.) Highland alleges that the MPSC failed to pay Highland $329,183.03 for work it completed on the Old Post Office Pavilion project, and brings this action against Hanover, MPSC's surety. (Id. ¶¶ 7-9.)

Hanover moved under Federal Rule of Civil Procedure 12(b)(1) to dismiss, arguing that this court lacked subject matter jurisdiction. Hanover asserted that the last labor performed and the last material supplied on the contracts was in July 2006, more than the Miller Act's one-year limitation period before this lawsuit was filed on October 22, 2007. Hanover has provided an affidavit from the Vice President of MPSC who administered the contracts stating that the last work performed that was central

- 3 -

to Contract 212 was performed in June 2006, and that the last
work performed on Contracts 221 and 166 was performed in
July 2006.  (Def.'s Mot. to Dismiss ("Def.'s Mot."), Ex. 4, Aff.
of Rob Johnston ("Johnston Aff.") at 1-2.)  Accompanying the
affidavit were copies of invoices on Contracts 212 and 221
reflecting work performed on those contracts no later than
July 2006, as well as a certified copy of Highland's payroll for
the period between May 5, 2006 and August 25, 2006, showing that
the latest work on Contract 166 was done on July 28, 2006.
Highland opposed by providing copies of punch lists showing work
that Highland says it performed under the contracts between
July 2006 and January 7, 2007.  (See Pl.'s Mem. in Opp'n to
Def.'s Mot. to Dismiss ("Pl.'s Opp'n").)

     Magistrate Judge Facciola issued a report recommending that
Hanover's motion to dismiss be granted because Highland filed its
complaint more than one year after the day on which it performed
its last labor or supplied its final material.  Hanover objects
to Magistrate Judge Facciola's recommendation, citing as error
the conclusion that the work performed after the end-dates
mentioned in Johnston's affidavit was remedial work and not
original contract work.

- 4 -

DISCUSSION

A magistrate judge's report and recommendation is reviewed de novo.  LCvR 72.3(c); <u>see</u> <u>also</u> Fed. R. Civ. P. 72; <u>Ames v. Yellow Cab of D.C., Inc.</u>, Civil Action No. 00-3116 (RWR), 2006 WL 2711546, at *4 (D.D.C. September 21, 2006).  "Before a court may address the merits of a complaint, it must assure that it has jurisdiction to entertain the claims." <u>Osserian v. Int'l Fin. Corp.</u>, 498 F. Supp. 2d 139, 143 (D.D.C. 2007) (quoting <u>Rodriquez v. Nat'l Ctr. for Missing & Exploited Children</u>, Civil Action No. 03-120 (RWR), 2005 WL 736526, at *6 (D.D.C. Mar. 31, 2005)).  When assessing a motion to dismiss for lack of subject matter jurisdiction, a court may consider any undisputed facts in the record, or "the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." <u>Coalition for Underground Expansion v. Mineta</u>, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting <u>Herbert v. Nat'l Acad. of Sciences</u>, 974 F.2d 192, 197 (D.C. Cir. 1992)).

Cases in this and other jurisdictions have held that the one-year limitations period in the Miller Act forms an integral part of the statute and is jurisdictional in character. <u>See, e.g.</u>, <u>United States ex rel. Corbett Tech. Solutions v. Safeco Ins. Co. of Am.</u>, 238 F. Supp. 2d 168, 171 (D.D.C. 2002) (citing <u>United States ex rel. Lank Woodwark Co. v. CSH Contractors, Inc.</u>, 452 F. Supp. 922, 924 (D.D.C. 1978)); <u>United States ex rel.</u>

Celanese Coatings Co. v. Gullard, 504 F.2d 466, 468 (9th Cir.
1974) ("As an integral part of the statute creating the remedy,
the one year limitation in [the Miller Act] is jurisdictional.");
 Diversified Carting, Inc. v. City of New York, Civ. Action No.
04-9507, 2006 WL 147584, at *10 (S.D.N.Y. January 20, 2006)
("[T]he Miller Act limitations period is jurisdictional[.]");
United States v. Hartford Fire Ins. Co., 339 F. Supp. 2d 799, 802
(W.D. Tex. 2004) ("[T]he one-year filing requirement [is] a
jurisdictional limitation[.]").

    However, the D.C. Circuit, describing limitation periods as
being substantive restrictions on claims rather than impediments
to jurisdiction, has stated that "[s]tatutes of limitations
create affirmative defenses" which are properly raised in "a
motion under Rule 12(b)(6) [to dismiss for failure to state a
claim for which relief can be granted], not a motion under Rule
12(b)(1)" to dismiss for lack of subject matter jurisdiction.
Gordon v. Nat'l Youth Work Alliance, 675 F.2d 356, 360 (D.C. Cir.
1982).  Likewise, the Supreme Court has recognized that there is
a rebuttable presumption that statutes of limitations in suits
against private parties can be equitably tolled.[1]  Irwin v. Dep't

---

[1] This may be true for even 28 U.S.C. § 2401(a), the general
statute of limitations for suits against the federal government.
See Harris v. Fed. Aviation Admin., 353 F.3d 1006, 1013 n.7 (D.C.
Cir. 2004), and Felter v. Norton, 412 F. Supp. 2d 118, 123-24
(D.D.C. 2006) (casting doubt on the proposition that § 2401 is a
jurisdictional prerequisite to suit in federal court).

of Veterans Affairs, 498 U.S. 89, 95-96 (1990).  More recently,
the Court has even said that "in recent decisions, we have
clarified that time prescriptions, however emphatic, are not
properly typed 'jurisdictional.' . . .  We have described . . .
unrefined dispositions [on jurisdictional grounds] as 'drive-by
jurisdictional rulings' that should be 'accorded no precedential
effect' on the question whether the federal court had authority
to adjudicate the claim in suit."  Arbaugh v. Y&H Corp, 546 U.S.
500, 510-11 (2006).  Indeed, other courts have ruled that the
Miller Act's one-year limitations period is not accurately
described as jurisdictional, but instead is a condition precedent
to bringing an action under the Miller Act that a plaintiff must
satisfy.  See, e.g., United States ex rel. PRN Ass'n Inc. v. K&S
Enter. Inc., Civ. Action No. 04-470, 2007 WL 925267, at *4 (S.D.
Ind. March 27, 2007) ("Defendants did not waive the timeliness
issue by failing to plead in their answer an affirmative defense
under the statute of limitations. . . .  [T]he one-year time
limit under the Miller Act [is] a condition precedent to suit, so
that the burden is on the plaintiff to plead and prove compliance
with the time limit[.]"); United States ex rel. Automatic
Elevator Co. v. Lori Construction, 912 F. Supp. 398, 399 (N.D.
Ill. 1996) ("[T]he bulk of the cases -- particularly the more
recent authority -- view the one-year restriction on suit as a
limitations period instead [of a jurisdictional limitation], with

the possibility that failure to meet that timetable may be excused under the principles of equitable tolling and the like[.]"); United States ex rel. American Bank v. C.I.T. Constr., Inc., 944 F.2d 253, 256-257 (5th Cir. 1991) ("[O]ur use of the word 'jurisdictional' [in previous cases] referred 'to the conditional nature of the right to sue' under the Miller Act, not to the 'jurisdiction of the court itself.' . . .  The one-year period in the Miller Act is limitational, not jurisdictional."); United States v. Fidelity & Deposit Co., 813 F.2d 697, 699 (5th Cir. 1987) ("It is not surprising, therefore, that a majority of the Circuit Courts, in construing the Miller Act's provisions, have followed the lead of the Heard Act courts and treated the one-year requirement as a substantive limitation of the rights conferred by the Act. . . .  However, to the extent that the word 'jurisdictional' is used in those cases, it refers to the conditional nature of the right to sue, not to the jurisdiction of the court itself.").

The more sound position appears to be, then, that the one-year period of limitations found in the Miller Act is substantive, not jurisdictional, and thus is an affirmative defense that must be analyzed under Rule 12(b)(6) instead of Rule 12(b)(1), and be subject to the doctrines of waiver, estoppel,

- 8 -

and equitable tolling.[2]  Felter, 412 F. Supp. 2d at 122.  Thus,
the motion to dismiss will be viewed at this stage as one brought
under Rule 12(b)(6).

When "matters outside the pleadings are presented to and not
excluded by the court" on a motion to dismiss under Rule
12(b)(6), "the motion must be treated as one for summary
judgment[.]"  Fed. R. Civ. P. 12(d).  In particular, on a motion
to dismiss under Rule 12(b)(6) asserting a statute of limitations
bar, where both parties submit material outside the pleadings and
"the parties are not taken by surprise or deprived of a
reasonable opportunity to contest facts averred outside the
pleadings and the issues involved are discrete" legal issues, the
court may convert the motion to a motion for summary judgment
"without providing notice or the opportunity for discovery to the
parties."  See Tunica-Biloxi Tribe of La. v. United States, 577
F. Supp. 2d 382, 405 (D.D.C. 2008) (converting motion to dismiss
under 12(b)(1) and 12(b)(6) to a motion for summary judgment);
Smith v. United States, 518 F. Supp. 2d 139, 145, 155 (D.D.C.
2007)(converting motion to dismiss for failure to file within the
limitations period to motion for summary judgment and considering
exhibits and affidavits outside the pleadings that were submitted

---

[2] Highland does not present anything showing that the
doctrines of waiver, estoppel, or equitable tolling should apply
in this case.  Highland argues only that the limitations period
should begin running from January 2007 since it engaged in work
between July 2006 and January 2007.

by the parties, stating "[t]he plaintiff, also under the mistaken impression that the government's statute of limitations argument was properly before the Court under a Rule 12(b)(1) motion, submitted affidavits and exhibits in response to the government's evidence.  Under these circumstances, the plaintiff cannot claim to be caught in surprise by the Court's consideration of the exhibits and affidavits submitted by the parties") (internal quotations omitted); Kamen v. IBEW, 505 F. Supp. 2d 66, 71 (D.D.C. 2007) (converting motion to dismiss to motion for summary judgment because the issue remaining was a purely legal issue and "[f]airness, not excessive technicality is the guiding principle under . . . the Federal Rules of Civil Procedure"); Automatic Elevator Co., 912 F. Supp. at 400 (N.D. Ill. 1996) (granting a motion to dismiss for failure to file action within the Miller Act's one-year statute of limitations by converting that motion to "something akin to" a motion for summary judgment, because both parties submitted material outside of the pleadings, and there was no dispute about the authenticity of the parties' submissions).  Both parties here submitted evidence in support of their interpretation of when the limitations period began running, and neither Highland nor Hanover contests the validity of the other party's submitted material.  The dispute centers on the legal question of whether Highland's submissions demonstrate work that would toll, or extend, the beginning of the limitations

period.  Hanover's motion, then, will be treated as one for summary judgment.

Summary judgment may be granted when the moving party demonstrates that there is no genuine issue as to any material fact and that moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "In considering a motion for summary judgment, [a court is to draw] all 'justifiable inferences' from the evidence . . . in favor of the nonmovant." Cruz-Packer v. Dist. of Columbia, 539 F. Supp. 2d 181, 189 (D.D.C. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "The relevant inquiry 'is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  Single Stick, Inc. v. Johanns, 601 F. Supp. 2d 307, 312 (D.D.C. 2009) (quoting Anderson, 477 U.S. at 250).  A genuine issue exists where the "evidence is such that a reasonable jury could return a verdict for the non-moving party," as opposed to where the evidence is "so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 248, 252.

An action brought under the Miller Act must be filed "no later than one year after the day on which the last of the labor

was performed or material was supplied by the person bringing the action."  40 U.S.C. § 3133(b)(4).  A plaintiff cannot survive a timeliness challenge without specific evidence of original contract work being performed within the one-year limit.  See United States ex rel. Kentucky Indus. Metals, Ltd. v. Hartford Fire Ins. Co., Civ. Action No. 07-32-H, 2007 WL 3231436, at *1 (W.D. Ky. Oct. 30, 2007) (granting defendant's dispositive motion where plaintiff submitted daily reports that contained "no reliable evidence of work performed by Plaintiff," and that "lack[ed] the specificity that one would expect, particularly where it is necessary to overcome the evidentiary force of contrary company documentary evidence"); Automatic Elevator Co., 912 F. Supp. at 400-01 (granting defendant's dispositive motion where the plaintiff showed only that it performed work under a warranty clause, not work on the original contract, within one year of the date it filed its complaint); United States ex rel. General Electric Co. v. Amwest Surety Ins. Co., Civ. Action No. 96-C-8061, 1997 WL 222869, at *2 (N.D. Ill. April 24, 1997) (granting defendant's dispositive motion where plaintiff completed its work on the contract more than one year before filing suit); United States ex rel Mod-Form, Inc. v. Barton & Barton Co., 769 F. Supp. 235, 238-239 (E.D. Mich. 1991), aff'd, 966 F.2d 1453 (6th Cir. 1992) (disposing of plaintiff's claim since it was filed approximately two years after the date of

- 12 -

plaintiff's last work).  The determinative question here is whether Highland produced evidence that the work it claims to have engaged in after the dates listed in Johnston's affidavit was "part of the original contract or furnished merely for the purpose of correcting defects, or making repairs following inspection of the project."  Lank Woodwark Co., 452 F. Supp. at 925 (noting that work furnished merely to correct defects, or to make repairs following inspection of the project, would not extend the period of limitations); see also United States ex rel. Austin v. Western Electric Co., 337 F.2d 568, 572-73 (9th Cir. 1964) (determining that the test for whether work extends the limitations period under the Miller Act was "whether the work was performed and the material supplied as a part of the original contract or for the purpose of correcting defects, or making repairs following inspection of the project"); Corbett, 238 F. Supp. 2d at 172 (noting that not all work tolls the limitations period under the Miller Act); United States ex rel. Hussmann Corp. v. Fidelity & Deposit Co., 999 F. Supp 734, 741 (D.N.J. 1998) (noting that the rule in the majority of circuits, including the District of Columbia, is that "remedial or corrective work or materials, or inspection of work already completed, does not fall within the meaning of 'labor' or 'materials' and will not extend the Miller Act's one-year limitations period").

- 13 -

The report and recommendation determined that even accepting
all of Highland's assertions as true, the work that Highland
presented evidence of completing between July 2006 and
January 2007 was corrective or remedial in nature, and therefore
did not toll the limitation period under the Miller Act:

> [A]s is clear from caselaw, punch list work or work
> that is either corrective or remedial in nature does
> not toll the running of the statute of limitations
> under the Miller Act. . . .  [T]he items listed on
> plaintiff's punch lists require action that is clearly
> corrective or remedial in nature.  For example, the
> punch list for work performed on January 12, 2007
> included the following items for Room No. A8201: 1) cap
> drain pipe, 2) remove dust from lower wall and base
> board, 3) paint hinges at upper access panel, 4)
> replace left door at electrical closet A, 5) touch
> south wall near window, 6) tuck carpet edges at base,
> and 7) clean light fixtures. . . .  Although these
> tasks were performed after the date defendant claims
> was the date the last labor was performed on the three
> contracts at issue, for purposes of calculating the
> date that the statute of limitations begins to run, the
> key is not whether work was performed on the contract
> but whether the work that was performed was significant
> or crucial to the operation of the project.  While
> punch list items by their very nature are not crucial
> to the operation of a project, . . . the jobs
> identified on the lists provided by plaintiff are minor
> repairs which can in no way be deemed significant or
> crucial to the completion of the renovation of the Old
> Post Office Pavilion.  Plaintiff, who bears the burden
> of proof, failed to produce any evidence that work
> performed after the end dates cited by defendant was
> for anything other than punch list items.

(Report and Recommendation at 7-8.)

Highland objects to the report and recommendation on several
grounds.  First, Highland argues that the report erred by
disregarding the assertion in Highland's memorandum in opposition

- 14 -

to defendant's motion to dismiss that "there were additional
requests for change order payments" between September 6, 2006 and
January 12, 2007. (See Pl.'s Opp'n. ¶ 5.)  Even accepting
Highland's assertion as true, Highland's own evidence does not
show that Highland engaged in work that was significant or
crucial to the operation of the project within one year of the
filing of this lawsuit.  Highland attached as Exhibit A to its
opposition a series of payroll sheets that bear no indicia of the
nature of the work for which the wages were paid, or when that
work took place.  The payroll material that pertained to a
subcontractor named Moya Construction reflects that a series of
checks was written to that subcontractor, but only one check had
any indication that it was written in, or corresponded to, the
time period within one year of the date that Highland filed the
complaint.  That check was for a noticeably smaller[3] amount than
were the other checks written to Moya Construction, and there is
no description of what work the check paid for or when that work
occurred.  (See Pl.'s Opp'n, Ex. A at pp. 4-6.)  Similarly,
Highland submitted payroll sheets for work done by a
subcontractor named VA Cabinet Company, LLC between September

---

[3] The sheets have one column listed as "paycheck date."  The
check with a paycheck date of October 24, 2006, was written for
$960.00.  The next smallest amount was the previous check, given
a paycheck date of October 16, 2006, which was written in the
amount of $2,112.00.  The three checks written before that were
written in the amounts of $4,416.00, $13,464.00, and $7,296.00.
(See Pl.'s Opp'n, Ex. A.)

through October 24, 2006.  However, these payroll sheets
similarly do not describe the nature of the work that was being
paid for or when the work occurred.  While the material contains
a brief line stating "Millwork as of 10-23-06," that line
reflects only that the work was engaged in before October 23,
2006.  Further, the payroll sheet containing a series of
paychecks to six employees states that the paychecks were issued
for work that was supplied before October 22, 2006.  All six
paycheck dates are listed as October 23, 2006; however, they list
hours for work days that appear to end the previous Wednesday,
October 18, 2006, more than one year before Highland filed suit
on October 22, 2007.  Further, while Highland asserts that page
nine of Exhibit A shows that the payroll information regarding VA
Cabinet Company, LLC certified that it represented "<u>work done</u>
'commencing on the 2nd day of October and ending on the 23rd day
of October, 2006," the page actually reads that it represents the
"<u>payroll period</u>" between October 2, 2006 and October 23, 2006.
(Emphasis added.)  (<u>See</u> Pl.'s Opp'n, Ex. A at pp. 7-9.)

Highland also submitted a payroll sheet for a subcontractor
named Comfort Control, Inc. for work purportedly done between
January 8, 2007 and January 14, 2007.  (<u>See</u> Pl.'s Opp'n, Ex. A at
p. 11-12.)  Again, though, the payroll sheet bears no indicia of
the type of work for which the subcontractor was being paid.
This fails to rebut Johnston's sworn assertion that the last work

- 16 -

performed under the contracts occurred in July 2006, or the
conclusion that the actual work done thereafter as is reflected
in plaintiff's exhibits was corrective or remedial work that does
not extend the limitation period.  (See Pl.'s Opp'n, Ex. A at
p. 12; Johnston Aff. at 1-2.)

Highland also argues that the report and recommendation
erred by failing to consider a memorandum written by project
manager Reba Burbach to Johnston on October 29, 2006 stating that
"there are a few items that have been put on the punch list for
phase 1 and phase 2 that are not punch list items, they are
change orders."  (Pl.'s Objections at 3; Pl.'s Opp'n, Ex. B at
p. 4.)  Missing here, too, is any explanation or identification
of which items listed on the phase 1 and phase 2 punch lists,
which the report and recommendation deemed corrective or remedial
punch list work, were actually change orders.  Highland does not
provide any facts that contradict Johnston's affidavit, and has
failed to present a genuine issue of material fact concerning
whether the action was filed within the one-year limitations
period.

CONCLUSION

Highland has not shown a genuine dispute about material
facts showing that this action was filed outside of the one-year
period of limitations found in the Miller Act.  Accordingly,

- 17 -

summary judgment will be entered in favor of Hanover.  A final

Order accompanies this Memorandum Opinion.

SIGNED this 1st day of June, 2009.

_____/s/_____
RICHARD W. ROBERTS
United States District Judge